UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

JOE WILLIAMS,

                                        Plaintiff,

    vs.                                                         9:17-CV-990
                                                                        (TJM/ATB)

MS. SYKES, et al.,

                                        Defendants.

---

JOE WILLIAMS, Plaintiff, pro se
DAVID A. ROSENBERG, Asst. Attorney General for Defendants

ANDREW T. BAXTER
United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the Honorable Thomas J. McAvoy, Senior United States District Judge. Plaintiff brings this civil rights action pursuant to 42 U.S.C. § 1983, claiming that he was denied constitutionally adequate medical and dental care while he was incarcerated at the Central New York Psychiatric Center ("CNYPC"). (Complaint ("Compl.")) (Dkt. No. 1).

Presently before the court is defendant Dr. Feinstein's motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6).[1] (Dkt. No. 14). Plaintiff has responded in opposition. (Dkt. Nos. 18, 24). For the following reasons, this court agrees with defendant and will recommend granting the defendant's motion to dismiss.

---

[1] There are other defendants in this action. However, the motion to dismiss relates only to Dr. Feinstein and plaintiff's dental care.

**I.   Facts[2]**

In order to determine the facts that plaintiff is attempting to allege, the court must consider both his complaint and the documents that he has attached.[3] Plaintiff claims that he complained about dental pain due to a broken tooth which left "a hole" in his mouth and a toothache. Plaintiff has named Dr. Feinstein and other nursing staff as defendants. Plaintiff states that defendant Feinstein "verbally expressed to [plaintiff] in strong terms that medical didn't [fax] him[,] [a]nd he didn't get any information concerning my suffering." (Compl. ¶ 1).

Plaintiff also states that "a nurse" told plaintiff on two occasions that his face was "still swollen," and that this was four to six weeks after plaintiff's initial request to see the dentist. (Compl. ¶ 2). Plaintiff claims that defendant Nurse Sykes told him that it was the "dentist's error." (*Id.*) Plaintiff alleges that the medical staff went "beyond negligence" and were "indifferent" to his "extreme" medical needs. Plaintiff claims that he wrote many notes to the staff that went unanswered or were not transmitted to the appropriate medical personnel.[4]

---

[2] This court will only discuss the facts as they relate to the moving defendant, Dr. Feinstein, and plaintiff's dental care.

[3] Plaintiff has attached documents relating to his administrative remedies and letters that an attorney from Mental Hygiene Legal Service sent on plaintiff's behalf regarding his medical and dental care. (Dkt. Nos. 1-1-1-14).

[4] The notes involved other medical issues in addition to plaintiff's broken tooth. Not every note referenced plaintiff's dental problem.

**II.   Motion to Dismiss**

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).

When considering a motion to dismiss pursuant to Rule 12(b)(6), the court's consideration is limited to the factual allegations as stated in the complaint, documents attached to the complaint as exhibits or incorporated into the complaint by reference, and matters of which the court can take judicial notice. *Portillo v. Webb*, No. 16 Civ. 4731, 2017 WL 4570374, at *1 (S.D.N.Y. ) (quoting *Brass v. Am. Film Tech.*, 987 F.2d 142, 150 (2d Cir. 1993) (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991)).  A court may take judicial notice of a public record pursuant to Fed. R. Evid. 201(b). *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000).  In the case of a pro se litigant, the court may also consider materials that the pro se attaches to his or her papers in opposition to the motion to dismiss. *Portillo v. Webb*, 2017 WL 4570374, at *1 (citations omitted).

### III. Medical/Dental Care

#### A. Legal Standards

The court notes that plaintiff is civilly committed at CNYPC. Civilly committed individuals are protected by the Due Process Clause rather than the Eighth Amendment, however, the appropriate standard for constitutional medical claims asserted by civilly committed individuals is the same deliberate indifference standard that applies to convicted prisoners and pretrial detainees. *Ahlers v. Kaskiw*, No. 9:12-CV-501, 2014 WL 4184752 (N.D.N.Y. Aug. 21, 2014).

In order to state a claim based on constitutionally inadequate medical treatment, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). There are two elements to the deliberate indifference standard. *Smith v. Carpenter*, 316 F.3d 178, 183–84 (2d Cir. 2003). The first element is objective and measures the severity of the deprivation, while the second element is subjective and ensures that the defendant acted with a sufficiently culpable state of mind. *Id.* at 184 (citing *inter alia Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

##### 1. Objective Element

In order to meet the objective requirement, the alleged deprivation of adequate medical care must be "sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Determining

whether a deprivation is sufficiently serious also involves two inquiries. *Id.* The first question is whether the plaintiff was actually deprived of adequate medical care. *Id.* Prison officials who act "reasonably" in response to the inmates health risk will not be found liable under the Eighth Amendment because the official's duty is only to provide "reasonable care." *Id.* (citing *Farmer*, 511 U.S. at 844–47).

The second part of the objective test asks whether the purported inadequacy in the medical care is "sufficiently serious." *Id.* at 280. The court must examine how the care was inadequate and what harm the inadequacy caused or will likely cause the plaintiff. *Id.* (citing *Helling v. McKinney*, 509 U.S. 25, 32–33 (1993)). If the "unreasonable care" consists of a failure to provide ***any*** treatment, then the court examines whether the inmate's condition itself is "sufficiently serious." *Id.* (citing *Smith v. Carpenter*, 316 F.3d 178, 185–86 (2d Cir. 2003)). However, in cases where the inadequacy is in the medical treatment that was actually afforded to the inmate, the inquiry is narrower. *Id.* If the issue is an unreasonable delay or interruption of ongoing treatment, then the "seriousness" inquiry focuses on the challenged delay itself, rather than on the underlying condition alone. *Id.* (citing *Smith*, 316 F.3d at 185). The court in *Salahuddin* made clear that although courts speak of a "serious medical condition" as the basis for a constitutional claim, the seriousness of the condition is only one factor in determining whether the deprivation of adequate medical care is sufficiently serious to establish constitutional liability. *Id.* at 280.

### 2. Subjective Element

The second element is subjective and asks whether the official acted with "a sufficiently culpable state of mind." *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 300 (1991)). In order to meet the second element, plaintiff must demonstrate more than a "negligent" failure to provide adequate medical care. *Id.* (citing *Farmer*, 511 U.S. at 835–37). Instead, plaintiff must show that the defendant was "deliberately indifferent" to that serious medical condition. *Id*. Deliberate indifference is equivalent to subjective recklessness. *Id.* (citing *Farmer*, 511 U.S. at 839–40).

In order to rise to the level of deliberate indifference, the defendant must have known of and disregarded an excessive risk to the inmate's health or safety. *Id.* (citing *Chance*, 143 F.3d at 702). The defendant must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he or she must draw that inference. *Chance*, 143 F.3d at 702 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). The defendant must be subjectively aware that his or her conduct creates the risk; however, the defendant may introduce proof that he or she knew the underlying facts, but believed that the risk to which the facts gave rise was "insubstantial or non-existent." *Farmer*, 511 U.S. at 844. The court stated in *Salahuddin* that the defendant's belief that his conduct posed no risk of serious harm "need not be sound so long as it is sincere," and "even if objectively unreasonable, a defendant's mental state may be nonculpable." *Salahuddin* 467 F.3d at 281.

6

Additionally, a plaintiff's disagreement with prescribed treatment does not rise to the level of a constitutional claim. *Sonds v. St. Barnabas Hosp. Correctional Health Services*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001). Prison officials have broad discretion in determining the nature and character of medical treatment afforded to inmates. *Id.* (citations omitted). An inmate does not have the right to treatment of his choice. *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986). Because plaintiff might have preferred an alternative treatment or believes that he did not get the medical attention he desired does not rise to the level of a constitutional violation. *Id.*

Disagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment. *Sonds*, 151 F. Supp. 2d at 312 (citing *Estelle v. Gamble*, 429 U.S. at 107). Even if those medical judgments amount to negligence or malpractice, malpractice does not become a constitutional violation simply because the plaintiff is an inmate. *Id.; see also Daniels v. Williams*, 474 U.S. 327, 332 (1986) (noting that negligence is not actionable under § 1983). Thus, any claims of malpractice, or disagreement with treatment are not actionable under § 1983.

**B.   Application**

With respect to plaintiff's dental care by Dr. Feinstein, defendants argue that plaintiff has fulfilled neither the objective nor the subjective prong of the above standard. A review of the documents submitted by plaintiff show that he wrote notes

7

entitled "Resident Request for Staff Meeting." (*See* Dkt. 1-2).[5] The first note regarding plaintiff's tooth was written on January 13, 2016, entitled "Emergency request to see dentist," and stated that plaintiff need help because he lost half of a back tooth, he had a toothache, and he needed to see the dentist the next day. (Dkt. No. 1-2 at CM/ECF p.4). The next note is addressed "To Dentist,"[6] dated January 27, 2016, and asks for assistance to "check" the hole in plaintiff's tooth. Plaintiff re-stated that his tooth fell out, leaving a hole and a toothache. (Dkt. No. 1-2 at CM/ECF p.6).

The next note which could be related to plaintiff's tooth is dated February 21, 2016, is addressed to "Risk Management," and complains about the "unprofessionalism and misconduct" of the "staff members." (Dkt. No. 1-2 at CM/ECF p.11). Plaintiff states that the unprofessional staff members are prolonging plaintiff's physical and mental suffering, and that the Head Nurse and defendant Sykes "has [sic] violated my rights to see Doctors which has cause [sic] prolong suffering." (*Id.*) On February 24, 2016, plaintiff wrote a note addressed to "Nurse/Doctor/Dentist." (Dkt. No. 1-2 at CM/ECF p.12). Plaintiff states that he was feeling nauseated, had a painful mouth, and the right side of his face was swollen. (*Id.*) Plaintiff states that he found out about his swollen face when the "nurse" brought it to his attention. (*Id.*)

---

[5] The court notes that plaintiff has filed multiple copies of the same documents. (Dkt. Nos. 1-2, 1-3, 1-4). This may be because plaintiff is submitting his administrative appeals which all contain the same documents.

[6] The form requests that the inmate indicate the "Staff member I would like to meet with:"

8

Finally, on February 25, 2016, plaintiff again addressed a note to "Nurse/Doctor/ Dentist." (Dkt. No. 1-2 at CM/ECF p.13). Plaintiff states that he was still having pain in his mouth, he was still feeling nauseated, and that the nurse on duty told plaintiff that the right side of his face was still swollen.[7]

Also attached to the complaint is a letter from Jeff Nowicki, the Chief of Mental Health Treatment Services at CNYPC. (Dkt. No. 1-4 at CM/ECF p.3-4). This letter is dated March 24, 2016, and is written in response to correspondence from plaintiff's attorney in reference to the plaintiff's "Objection to Care and Treatment." (*Id.*) Mr. Nowicki outlined the care that plaintiff received for all of his ailments, beginning in November of 2015. It is noted that "Mr. Williams was seen by dentist for extraction of tooth on February 11, 2016, and the extraction completed at this time." (*Id.*)

The letter also states that "nursing triage" was completed on February 16, 2016 for plaintiff's complaints of nausea, foot pain, and pain in his tooth (once again)." The letter indicates that a consult was completed to see the dentist for follow up of plaintiff's tooth extraction, but no date is listed for that consult. The letter states that plaintiff was "provided an antibiotic, amoxicillin, for his tooth pain on February 26, 2016." The last line of the letter reads: "Mr. Williams has been encouraged to tell the nurse at the time he is experiencing pain so that treatment can be offered in a timely fashion." (*Id.*)

---

[7] Plaintiff was also complaining about other medical ailments that are not related to this defendant's motion.

9

In his appeal letter, dated March 30, 2016, plaintiff's counsel acknowledged that "Mr. Williams' dental concerns have now finally been addressed," but stated that these developments did not change the fact that plaintiff had to wait "months" for the staff to respond. (Dkt. No. 1-6 at CM/ECF p.1).

The court first notes that, according to his own documents, plaintiff waited less than one month for his tooth extraction. In plaintiff's complaint, he states that Dr. Feinstein told plaintiff that he was unaware of plaintiff's suffering. Plaintiff blamed Nurse Sykes for her failure to communicate the information to the doctors/dentist.[8] Thus, it is unclear how long before the extraction Dr. Feinstein was aware that plaintiff had a dental problem. There is no evidence to support a claim of deliberate indifference by Dr. Feinstein.

In addition, the plaintiff states that a nurse *told him* that his face was swollen on two occasions. Plaintiff does not appear to have been having any pain or discomfort from the swelling. Swelling after any kind of surgery is common. In any event, plaintiff's exhibit states that plaintiff was provided an antibiotic for his tooth pain on February 26, 2016. Plaintiff's own attorney conceded that the entire issue was resolved by March of 2016.

Although in *Chance v. Armstrong*, the Second Circuit held that inadequate dental

---

[8] The court does note that, in plaintiff's response to the motion to dismiss, he now states that Nurse Sykes did tell Dr. Feinstein about plaintiff's tooth. Clearly, the doctor was aware of plaintiff's dental problem because an extraction was scheduled and completed. However, as discussed below, this does not rise to the level of deliberate indifference.

10

care, resulting in extreme pain, tooth deterioration, and inability to eat, properly constitutes a serious medical need, this case does not approach the severity of the plaintiff's situation in *Chance* and in other cases in which a serious medical need has been found. *See Caves v. Cuevas*, No. 3:17-CV-5709892, at *3 (D. Conn. Nov. 27, 2017) (Plaintiff had impacted wisdom teeth, causing severe pain, difficulty eating, and risk of abscess. In addition, plaintiff's condition was ignored "for nearly a year.") In *Chance*, the Second Circuit specifically stated that "'not all claims regarding improper dental care will be constitutionally cognizable,'" and that dental conditions, like other medical conditions may be of varying severity. *Id.*

In this case, plaintiff complained of a broken tooth and pain, but never alleges that the delay caused deterioration in his physical condition, that he could not eat, or that he had lasting effects from the delay in extracting the one broken tooth. In *Harrison v. Barkley*, 219 F.3d 132, 134-37 (2d Cir. 2000), the plaintiff suffered from a cavity in one of his few remaining teeth. When plaintiff sought treatment, the prison dentists felt that another tooth was more seriously affecting Harrison's well being, and ***refused*** to treat the cavity until another tooth was extracted. *Id.* Harrison refused the extraction, and his cavity went untreated until he agreed to the extraction of the other tooth, despite his complaints of pain. *Id.*

In *Harrison*, the Second Circuit held that, while the cavity was not a serious medical condition in the strict sense, it was a degenerative condition, which if left

11

untreated, was "likely to produce agony and to require more invasive and painful treatments, such as root canal therapy or extraction." *Id.* at 137. Thus, the court in *Harrison* found that plaintiff's cavity presented a "serious medical need" because the failure to treat it would cause it to degenerate with serious complications. *Id.*

Subsequent cases have distinguished *Harrison* and *Chance* based on the fact that there was no "refusal" or "conditional refusal" of medical/dental treatment. *See e.g. O'Connor v. McCardle*, No. 04-CV-314, 2006 WL 436091, at *7-9 (N.D.N.Y. Feb. 22, 2006) (distinguishing *Harrison* on the facts, finding that although plaintiff had pain, and there was a lapse in treatment, plaintiff did see the doctor and discussed his options). In addition, as stated above, when the issue is one of delay, it is appropriate to focus on the challenged delay or interruption in treatment, rather than on the plaintiff's condition alone. *Smith, supra*. In doing so, the court may consider the absence of adverse medical effects or demonstrable physical injury, associated with such delay. *O'Connor*, 2006 WL 436091, at *8.

In this case, at most, plaintiff waited less than one month to see the dentist and have his tooth extracted. After the extraction, he was given medication shortly after his swelling developed. The swelling apparently did not cause him substantial pain or discomfort, because it was observed by a nurse, not felt by plaintiff. Plaintiff's dental problems were resolved by March of 2016, and there is no claim that plaintiff suffers any lasting effects from the "delay" in treatment. Thus, plaintiff's toothache does not

rise to the level of a serious medical need, and plaintiff's claim does not meet the objective element of the deliberate indifference test.

The court also notes that plaintiff's allegations also do not satisfy the subjective prong of the deliberate indifference standard. Plaintiff never alleges that the dentist refused to see him or that he ever dealt directly with Dr. Feinstein when plaintiff made his request for dental care. In his response to the defendant's motion to dismiss plaintiff states that there is a question of fact regarding whether defendant Sykes notified defendant Feinstein that plaintiff was in pain. Clearly defendant Feinstein was notified that plaintiff had a dental problem since plaintiff's tooth was extracted on February 11, 2016.

There is no indication that Dr. Feinstein ignored a significant risk of injury to the plaintiff, by failing to take reasonable measures to abate it. *See Shand v. Chapdelaine*, No. 3:17-CV-1947, 2018 WL 279980, at *3 (D. Conn. Jan. 3, 2018) (citing *Harrison*, 219 F.3d at 137-38). The extraction of plaintiff's tooth was completed, and plaintiff was provided an antibiotic for his subsequent pain and/or swelling. There is no evidence of "conscious delay" or failure to treat an inmate's serious medical condition "'as punishment or for other invalid reasons.'" *See Bullock v. DSS*, No. 5:17-CV-1302, 2018 WL 1115218, at *5 n.9 (N.D.N.Y. Jan. 18, 2018) (Rep't Rec.) (citing *Harrison*, 219 F.3d at 138), *adopted* 2018 WL 1111059 (N.D.N.Y. Feb. 26, 2018). Thus, plaintiff does not state a constitutional claim against defendant Feinstein.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendant Feinstein's motion to dismiss (Dkt. No. 14) be **GRANTED**, and the complaint dismissed in its entirety as against **DEFENDANT DR. FEINSTEIN.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: March 8, 2018

*[signature]*

Hon. Andrew T. Baxter
U.S. Magistrate Judge