# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

JOE WILLIAMS,

                         Plaintiff,

        v.                                   9:17-CV-990
                                               (TJM/ATB)

MS. SYKES, et. al.,

                        Defendants.

JOE WILLIAMS, Plaintiff, pro se
DAVID A. ROSENBERG, Asst. Attorney General for Defendants

ANDREW T. BAXTER
United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the Honorable Thomas J. McAvoy, United States District Judge.  Plaintiff brings this civil rights action pursuant to 42 U.S.C. § 1983, claiming that he was denied constitutionally adequate medical and dental care while subject to civil confinement at Central New York Psychiatric Center ("CNYPC"). (Dkt. No. 1).

Presently before the court is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 31).  Plaintiff has not filed a response to defendants' motion.  For the reasons set forth below, this court will recommend granting defendants' summary judgment motion, and dismissing plaintiff's complaint in its entirety.

## I.    <u>Procedural History</u>

The court will review the procedural history in this action in order to clarify the

recommendation below.  Plaintiff filed his original complaint on September 6, 2017.
(Dkt. No. 1).  At the same time, plaintiff filed a motion to proceed in forma pauperis
("IFP").  (Dkt. No. 2).  On October 3, 2017, Judge McAvoy issued an order in which he
granted plaintiff's motion for IFP, dismissed plaintiff's conspiracy claims without
prejudice, and ordered that a response to plaintiff's Fourteenth Amendment claims be
filed by the defendants.  (Dkt. No. 4).

On December 27, 2017, defendant Feinstein filed a motion to dismiss the
Fourteenth Amendment deliberate indifference claim against him.  (Dkt. No. 14).  On
February 27, 2018, plaintiff filed a response in opposition to defendant Feinstein's
motion.  (Dkt. No. 24).  This court issued a report-recommendation on March 8, 2018,
recommending that defendant Feinstein's motion to dismiss be granted, and the
complaint dismissed in its entirety as against him.  (Dkt. No. 25).  Judge McAvoy
issued an order accepting and adopting the report-recommendation on April 12, 2018.
(Dkt. No. 26).

Now, upon completion of discovery, defendants bring the instant motion for
summary judgment dismissing the complaint in its entirety, arguing that plaintiff cannot
carry his burden of proving deliberate medical indifference against each remaining
defendant.  (Dkt. No. 31-2 at 3).

## II.    **Summary Judgment**

Summary judgment is appropriate where there exists no genuine issue of material
fact and, based on the undisputed facts, the moving party is entitled to judgment as a
matter of law.  Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir.

2006).  "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment.  *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial.  *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant.  *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin*, 467 F.3d at 272.

To be sufficient to create a "factual issue," in the context of a summary judgment motion, an allegation in an affidavit or verified complaint must not be conclusory or overly general.  *Smith v. Woods*, 9:03-CV-480 (DNH/GHL), 2006 WL 1133247, at *3 & n.10 (N.D.N.Y. Apr. 24, 2006).   Even where a complaint or affidavit contains specific assertions, the allegations "may still be deemed conclusory if [they

are] (1) 'largely unsubstantiated by any other direct evidence' and (2) 'so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint.'" *Id.,* 2006 WL 1133247, at *3 & n.11 (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 554-55 (2d Cir. 2005) ("While it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage, in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether 'the jury could reasonably find for the plaintiff,' . . .  and thus whether there are any "genuine" issues of material fact, without making some assessment of the plaintiff's account.")).

## III.  <u>Deliberate Indifference to Medical Needs</u>

### A.  **Legal Standard**

Plaintiff's claims are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eighth Amendment.  *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d. Cir. 2017) (citation omitted). The Supreme Court recently distinguished between Eighth and Fourteenth Amendment excessive force claims, holding that a pretrial detainee need not demonstrate that an officer accused of using excessive force was subjectively aware that his use of force was unreasonable. See *Kingsley v. Hendrickson*, —— U.S. ——, 135 S.Ct. 2466, 2470-71 (2015).  In *Darnell*, the Second Circuit extended the *Kingsley* standard to a pretrial detainee's allegations related to unconstitutional conditions of confinement. *See*

4

*Darnell*, 849 F.3d at 35.  District courts in this circuit have since further applied the *Kingsley* standard to claims of deliberate indifference to serious medical needs brought under the Fourteenth Amendment.  See *Villafane v. Sposato*, No. 16-CV-3674, 2017 WL 4179855, at *19 (E.D.N.Y. Aug. 22, 2017) ("District Courts in this circuit have applied *Kingsley* to claims for deliberate indifference to medical needs"); *Lloyd v. City of New York*, 246 F. Supp. 3d 704, 718 (S.D.N.Y. March 31, 2017) ("The reasoning of *Darnell* applies equally to claims of deliberate indifference to serious medical needs under the Fourteenth Amendment"); *Torrez v. Semple*, No. 17-CV-1211, 2017 WL 3841686, at *3 (D. Conn. Sept. 1, 2017) ("[F]or a claim of deliberate indifference to mental health needs or unconstitutional conditions of confinement under the Fourteenth Amendment, a pretrial detainee can satisfy the subjective element by showing that the defendants 'knew, or should have known, that the condition posed an excessive risk to health or safety' ").

Furthermore, the *Kingsley* standard applies here, even though Plaintiff was civilly confined and not a pretrial detainee, because "[t]he distinction *Kingsley* drew was not between pretrial detainees and non-detainees.  Instead, it was between claims brought under the Eighth Amendment's Cruel and Unusual Punishment Clause and those brought under the Fourteenth Amendment's Due Process Clause." *Durham v. Jones,* No. 9:17-CV-434 (LEK/DJS), 2019 WL 1103284, at *3 (N.D.N.Y. Jan. 23, 2019) (quoting *Edrei v. Maguire*, 892 F.3d 525, 535 (2d Cir. 2018) (citations omitted)).

"[D]eliberate indifference to serious medical needs . . . constitutes the 'unnecessary and wanton infliction of pain,' . . . whether the indifference is manifested

by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (internal citation omitted). In order to state a claim based on constitutionally inadequate medical treatment, a plaintiff must satisfy a two-prong test. *Darnell,* 849 F.3d at 29. The first element is objective and "considers whether the alleged deprivation of adequate medical care [was] sufficiently serious." *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006))(quotation marks omitted).[1] The second, 'mental' element[2] ensures that the defendant acted with at least deliberate indifference to the challenged conditions. *See Darnell*, 849 F.3d at 29; see also *Bell v. Carson*, No. 9:18-CV-783, 2018 WL 5993686, at *2 (N.D.N.Y. Nov. 15, 2018).

## 1.    Objective Element

In order to meet the objective requirement, the alleged deprivation of adequate

---

[1]Although the Supreme Court, in *Kinglsey*, altered the standard for deliberate indifference claims, the objective prong remains the same whether analyzed under the Eighth or Fourteenth Amendments. *Figueroa v. Cty. of Rockland*, No. 16-CV-6519 (NSR), 2018 WL 3315735, at *4 (S.D.N.Y. July 5, 2018).

[2]In *Darnell*, the Second Circuit cautioned that this element, commonly referred to as the "subjective prong," was better classified as a "*mens rea* prong" or "mental element prong." The Court reasoned that the term "subjective prong" might be a misleading description because "the Supreme Court has instructed that "deliberate indifference roughly means 'recklessness,' but 'recklessness' can be defined subjectively (what a person actually knew, and disregarded), or objectively (what a reasonable person knew, or should have known)." *Darnell,* 849 F.3d at 29 (citing *Farmer v. Brennan,* 511 U.S. 825, 836-37 (1994). After the Second Circuit concluded that deliberate indifference should be defined objectively for a claim of a due process violation, other courts in this circuit have adopted the phrase "mental element prong" to more appropriately describe the relevant standard. *See Durham,* 2019 WL 1103284, at *4; *Richardson v. Corr. Medical Care, Inc.,* No. 9:17-CV-0420 (MAD/TWD), 2018 WL 1580316, at *5-6 (N.D.N.Y. Mar. 28, 2018).

medical care must be "sufficiently serious." *Salahuddin*, 467 F.3d at 279 (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Determining whether a deprivation is sufficiently serious also involves two inquiries. *Id.* The first question is whether the plaintiff was actually deprived of adequate medical care. *Id.* Prison officials who act "reasonably" in response to the inmates health risk will not be found liable under the Eighth Amendment because the official's duty is only to provide "reasonable care." *Id.* (citing *Farmer*, 511 U.S. at 844–47).

The second part of the objective test asks whether the purported inadequacy in the medical care is "sufficiently serious." *Id.* at 280. The court must examine how the care was inadequate and what harm the inadequacy caused or will likely cause the plaintiff. *Id.* (citing *Helling v. McKinney*, 509 U.S. 25, 32–33 (1993)). If the "unreasonable care" consists of a failure to provide ***any*** treatment, then the court examines whether the inmate's condition itself is "sufficiently serious." *Id.* (citing *Smith v. Carpenter*, 316 F.3d 178, 185–86 (2d Cir. 2003)). However, in cases where the inadequacy is in the medical treatment that was actually afforded to the inmate, the inquiry is narrower. *Id.* If the issue is an unreasonable delay or interruption of ongoing treatment, then the "seriousness" inquiry focuses on the challenged delay itself, rather than on the underlying condition alone. *Id.* (citing *Smith*, 316 F.3d at 185). The court in *Salahuddin* made clear that although courts speak of a "serious medical condition" as the basis for a constitutional claim, the seriousness of the condition is only one factor in determining whether the deprivation of adequate medical care is sufficiently serious to establish constitutional liability. *Id.* at 280.

### 2.    Mental Element

Under the second prong of the deliberate indifference analysis, the Court must consider whether defendants "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the [plaintiff] even though [they] knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35.  "As a consequence, the relevant *mens rea* is recklessness, which, for present purposes, 'more closely resembles recklessness as the term is used in the civil context' and 'does not require a defendant to be subjectively aware of the harm resulting from his acts or omissions.'" *Singletary v. Russo,* No. 13-CV-04727, 2019 WL 1929819, at *10 (E.D.N.Y. Feb. 22, 2019) (citing *Feliciano v. Anderson*, No. 15-CV-4106, 2017 WL 1189747, at *13 (S.D.N.Y. Mar. 30, 2017)) (citations omitted). Under this standard, "a defendant possesses the requisite *mens rea* when he acts or fails to act under circumstances in which he knew, or should have known, that a substantial risk of serious harm to the [plaintiff] would occur." *Feliciano*, 2017 WL 1189747, at *13 (citing *Darnell*, 849 F.3d at 35).

A plaintiff's disagreement with prescribed treatment does not rise to the level of a constitutional claim.  *Sonds v. St. Barnabas Hosp. Correctional Health Services*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001).  Prison officials have broad discretion in determining the nature and character of medical treatment afforded to inmates.  *Id.* (citations omitted).  An inmate does not have the right to treatment of his choice.  *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986).  Because plaintiff might have preferred

an alternative treatment or believes that he did not get the medical attention he desired does not rise to the level of a constitutional violation. *Id.*

Furthermore, disagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not a plaintiff's constitutional rights. *Sonds*, 151 F. Supp. 2d at 312 (citing *Estelle v. Gamble*, 429 U.S. at 107). Even if those medical judgments amount to negligence or malpractice, malpractice does not become a constitutional violation simply because the plaintiff is an inmate. *Id.; see also Daniels v. Williams*, 474 U.S. 327, 332 (1986) (noting that negligence is not actionable under § 1983). Thus, any claims of malpractice, or disagreement with treatment are not actionable under § 1983.

### B.    Analysis

This is not a case in which plaintiff could claim that he received no care for his various health conditions, despite plaintiff's characterization of the defendants' "denial of medical treatments."[3] (Dkt. No. 1 at 4). The primary issue in this case is the alleged inadequacy of the care plaintiff received, together with the alleged delay in care, relative to plaintiff's (1) dental treatment, (2) podiatric treatment, and (3) headaches.[4]

---

[3]Plaintiff completed drafting his complaint and executed it before a notary public on April 25, 2017. (Dkt. No. 1 at 9). The complaint was not filed until September 6, 2017. (*Id.* at 1). The court notes that substantial treatment relative to plaintiff's lawsuit, including his ultimate foot surgery, continued to take place after the complaint was signed and filed.

[4]Plaintiff raised the allegation of deliberate indifference relative to his headaches for the first time at his deposition. (Dkt. No. 31-5 at 94). Notwithstanding the fact that plaintiff's complaint does not raise a claim regarding his headaches, the court will address plaintiff's deliberate indifference claim with respect to his headaches, in the interest of achieving finality.

### 1.    Dental Treatment

Plaintiff's claim regarding his toothache as against defendant nurse Audrey Sykes ("Skyes") and defendant nurse practitioner Candace Wilbur ("Wilbur") alleges defendants' "disregard of and failure to respond to [plaintiff's]. . . dental requests, needs." (Dkt. No. 1 at 6). Defendants argue that plaintiff fails to meet both the objective and subjective criteria of the deliberate indifference standard. (Dkt. No. 31-2 at 10-11).

This court addressed the issue of whether plaintiff's dental condition was sufficiently serious upon review of defendants' prior motion to dismiss. (Dkt. No. 25). For the reasons set forth in my March 8, 2018 Report-Recommendation, the fact remains that plaintiff's toothache does not rise to the level of a sufficiently serious medical need. (*Id.* at 10-13). The record as since developed does not contradict such a finding, nor does it indicate that this case approaches the severity of cases in which a serious medical need has been found relative to dental treatment. *See Caves v. Cuevas*, No. 3:17-CV-5709892, 2017 WL 5709892, at *3 (D. Conn. Nov. 27, 2017) (serious medical need recognized where plaintiff had impacted wisdom teeth, causing severe pain, difficulty eating, and risk of abscess. In addition, plaintiff's condition was ignored "for nearly a year"); *Mendoza v. McGinnis*, No. 9:05-CV-1124 (TJM/DEP), 2008 WL 4239760, at *10 (N.D.N.Y. Sept. 11, 2008) (broken tooth did not constitute serious dental need in absence of allegations that tooth "caused [inmate] to experience extreme pain or the likelihood, that if left untreated, his broken [tooth] would have resulted in degeneration").

Furthermore, since the evidence as developed indicates plaintiff was receiving on-going dental treatment, the court's inquiry is further narrowed to the question of whether defendants' conduct was "inadequate and what harm, if any, the inadequacy has caused or will likely cause the [plaintiff]." *Salahuddin*, 467 F.3d at 280. Otherwise stated, "it's the particular risk of harm faced by the [plaintiff] due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant for [constitutional] purposes." *Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003)(citing *Chance*, 143 F.3d at 702-03). Here, plaintiff has failed to produce any evidence that his medical condition worsened or that he was subjected to an unreasonable risk of future harm at the hands of defendants.

The record indicates that on January 14, 2016, the morning after plaintiff's initial complaint of tooth pain, defendant Sykes emailed the dentist to request a consultation. (Dkt. No. 32-1 at 1-2). Defendant Sykes was informed that the dentist was not available that day, however pain medication was made available to plaintiff. (*Id.* at 1). Plaintiff submitted another request to see the dentist on January 27, 2016. (Dkt. No. 1-2 at 6). On February 7, 2016, defendant Sykes emailed the dentist to report plaintiff's continued complaints of tooth pain, noting that there was no swelling and plaintiff was taking Motrin, with some relief. (Dkt. No. 32-2 at 1). Plaintiff was seen by the dentist on February 11, 2016 and diagnosed with an infected molar, which was extracted that day. (Dkt. No. 32-9 at 1). On February 16, 2016, plaintiff reported mouth pain; however upon examination by Nurse Sykes there were no signs of swelling or infection.

11

(Dkt. No. 32-4 at 1).  Nevertheless, plaintiff was provided pain medication,[5] and defendant Sykes communicated plaintiff's complaint to the dentist.  (*Id.*; Dkt. No. 32-3).  Plaintiff once again complained of continued right side facial swelling and pain on February 24, 2016, in response to which defendant Sykes emailed the dentist on February 25, 2016.  (Dkt. No. 32-5).  Plaintiff was seen in the CNYPC medical clinic the next day, where he was diagnosed with an infection, prescribed Amoxicillin, and scheduled to follow up with the dentist in one week.  (Dkt. Nos. 32-6; 32-7).  Plaintiff was noted to be "healing well" at his March 3, 2016 follow-up appointment, and on April 28, 2016, plaintiff declined any further treatment with respect to his tooth.  (Dkt. No. 32-9 at 2-3).

Accordingly, there is no evidence to suggest that any alleged delay in treatment caused deterioration to plaintiff's physical condition, prevented him from eating and sleeping, or caused any permanent, lasting effects.  Thus, plaintiff's claim does not meet the objective element of the deliberate indifference test.  *See Ray v. Zamilus*, No. 13-CV-2201, 2017 WL 4329722, at *8 (S.D.N.Y. Sept. 27, 2017) (finding that where a plaintiff suffered from a delay in treatment, rather than a complete lack of treatment, the objective element must be satisfied by harm that resulted from the delay.).

Plaintiff has also failed to meet the mental element prong of the deliberate indifference standard.  As it relates to defendant Sykes, there is simply no evidence that she "intentionally deprived plaintiff of adequate medical care," nor does the evidence support a finding that she "acted recklessly and 'knew or should have known' that her

---

[5]Based upon the relevant progress note, plaintiff was already receiving Motrin and Tylenol on an as needed basis for his complaints of "bone pain."  (Dkt. No. 32-4).

acts or omissions 'posed an excessive risk to [plaintiff's] health or safety.'" *Young v. Fricke,* No. 9:15-CV-1222 (MAD/TWD), 2018 WL 3121714, at *11 (N.D.N.Y. Feb. 12, 2018) (citing *Lloyd v. City of N.Y.*, 246 F. Supp. 3d 704, 720 (S.D.N.Y. 2017)). On the contrary, defendant Sykes was responsive to plaintiff's complaints of tooth pain – timely documenting plaintiff's complaints, communicating with the dentist for referral of treatment, and administering pain medication upon request. There is no evidence of "conscious delay" or failure to treat an inmate's serious medical condition "as punishment or for other invalid reasons." *See Bullock v. DSS,* No. 5:17-CV-1302 (BKS/TWD), 2018 WL 1115218, at *5 n.9 (N.D.N.Y. Jan. 18, 2018) (Rep't Rec.) (citing *Harrison,* 219 F.3d at 138), *adopted* 2018 WL 1111059 (N.D.N.Y. Feb. 26, 2018). Even assuming defendant Sykes initially failed to diagnose plaintiff's post-extraction infection, "negligence in diagnosing or treating an inmate's medical condition does not constitute deliberate indifference." *Ahlers v. Kaskiw*, No. 9:12-CV-501 (GLS/ATB), 2014 WL 4184752, at *7 (N.D.N.Y. Aug. 21, 2014) (citing *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). Thus, plaintiff's allegations against defendant Sykes do not rise to the level of a constitutional violation.

Despite defendants' contentions, it does appear that defendant Wilbur was involved, to some extent, in treating plaintiff with respect to his tooth pain. (Dkt. 32-13 at 1). Plaintiff presented to defendant Wilbur on April 17, 2015, at which time plaintiff acknowledged that the Amoxicillin had relieved his mouth pain and swelling. (Dkt. No. 32-13 at 1). Defendant Wilbur noted slight tenderness to the right upper molar, "but better than last week." (*Id.*). She further noted decreased swelling. (*Id.*).

Defendant Wilbur ultimately extended plaintiff's Amoxicillin prescription for three more days and contacted the dentist regarding plaintiff's treatment. (*Id.*). There is no indication that this defendant treated plaintiff with deliberate indifference.

As stated above, plaintiff's initial complaint of tooth pain was timely addressed; his problem tooth extracted within a month of his initial complaint, without any significant affect on his daily activities; and the infection, once identified, subsequently treated to plaintiff's satisfaction. There is simply no evidence that either defendant Sykes or defendant Wilbur treated plaintiff with the requisite state of mind sufficient to raise a question of fact, as to the constitutionality of his medical care. Accordingly, summary judgment is warranted.

### 2. Podiatric Treatment

Plaintiff also brings a claim against defendants Wilbur, Gregory Rorick, D.P.M. ("Rorick"), and Shiv Bhatt, M.D. ("Bhatt") for "denying" medical care relative to his right foot pain. (Dkt. No. 1 at 4). Specifically, plaintiff claims that:

> medical staff [went] beyond negligence. Some highly shown disregard and indifferent to my extreme medical needs. By not only prolonging my pain and suffering. Also by causing me to be in distress.
>
> Some used their professional positions to [bully] me. By way of manipulation and twisted my words to fix their intentions of covering up their unprofessionalism.
>
> [. . .]
>
> In this place it's so easy for some staff to cover up their errors. Th[a]n to admit their oversights or wrongdoing.

14

(*Id.* at 7-8).  In support of their motion for summary judgment, defendants argue that plaintiff cannot show defendant Wilbur, Rorick or Bhatt was deliberately indifferent to his serious medical needs, because the record demonstrates that any alleged delay of the foot surgery was entirely due to plaintiff's noncompliance.  (Dkt. No. 31-2 at 12-13).

The medical records indicate that plaintiff first complained of right foot pain on June 10, 2015,[6] in response to which a podiatric consultation was requested.  (Dkt. No. 32-37 at 1).  On August 3, 2015, plaintiff presented to defendant Rorick, a doctor of podiatric medicine.  (Dkt. Nos. 31-10 at 2-3; 32-37 at 2).  Plaintiff reported that he was experiencing pain along the tip of his second toe "from the bunion running into and jacking up his toe."  (*Id.*).  Defendant Rorick examined plaintiff and diagnosed him with a hallux valgus (bunion) and hammertoe on the right foot.  (*Id.*).  Defendant Rorick ordered weight bearing x-rays, and arranged for plaintiff to return for follow-up in one to two months.  (*Id.*).

Plaintiff presented to defendant Rorick for his follow-up appointment on October 5, 2015.  (Dkt. Nos. 31-10 at 3; 32-38 at 2-3). Plaintiff reported "terrible" right foot pain, with some pain over his bunion but the most pain at the tip of his second toe. (*Id.*).  Upon physical examination and review of x-rays, defendant Rorick advised plaintiff of the various treatment options available, including shoe modification, padding, NSAIDs, and surgery.  (*Id.*).  Plaintiff expressed his desire to have surgical

---

[6]Plaintiff testified at his deposition that he had experienced bunion pain "since [he] was a kid growing up." (Dkt. No. 31-5 at 17).  He also stated that the pain in his right foot had developed in 2013, prior to arriving at CNYPC.  (*Id.* at 88-89).

correction of his right foot. (*Id.*). Accordingly, defendant Rorick scheduled surgery[7] and advised, among other things, that plaintiff obtain an EKG test within seven days of surgery. (*Id.* at 4).

On September 21, 2015, defendant Wilbur met with plaintiff to discuss the scheduled surgery, and explained to plaintiff that he needed an EKG test before receiving general anesthesia. (Dkt. No. 32-13 at 3). According to the progress report from that date, plaintiff became "very irrate" and responded that he "ain't going for that or the surgery then." (*Id.*). The surgery was canceled. (*Id.*).

According to plaintiff's medical records, he eventually had the EKG on December 8, 2015. (Dkt. No. 32-13 at 4). Plaintiff thereafter requested that his surgery be rescheduled. (Dkt. No. 32-39 at 1). On March 7, 2016, defendant Rorick saw plaintiff once more to consider rescheduling him for "surgical reconstruction of his right foot." (*Id.* at 2). During the examination, defendant Rorick found plaintiff to be "very confrontational . . . threatening lawsuits, and it [had] become readily apparent [plaintiff was] NOT a good surgical candidate." (*Id.*). Defendant Rorick further expressed his belief that plaintiff would be non-compliant with post-operative instructions, including the necessity to remain non-weight bearing or else risk further deterioration. (*Id.;* Dkt. No. 31-10 at 5). Defendant Rorick discussed his opinion with

---

[7]Defendant Rorick scheduled multiple procedures to be performed on plaintiff's right foot, including: (1) McBride Bunionectomy Right; (2) Closing Base Wedge Osteotomy 1st Metatarsal Right; (3) Osteotomy Great Toe Right; and (4) Hammertoe Repair 2nd Digit Right. (Dkt. No. 31-10 at 4).

defendant Wilbur, who agreed with the doctor's decision to cancel the surgery.[8]  (*Id.*).

Almost a year later, on February 10, 2017, plaintiff met with defendant Wilbur to discuss his "recent"[9] concerns regarding his foot.  (Dkt. Nos. 32-13 at 5; 32-18).  Defendant Wilbur explained that defendant Rorick ultimately did not recommend surgery due to potential compliance issues.  (*Id.*).  According to the progress note, plaintiff responded that "he wouldn't have [defendant Rorick] perform surgery on him 'if he begged me.'" (Dkt. No. 32-13 at 5).  Defendant Wilbur then told plaintiff that she had requested a orthopedic consultation for plaintiff's complaints of left knee pain, and suggested plaintiff discuss foot surgery with the new doctor.  (*Id*).

On March 21, 2017, plaintiff saw defendant Bhatt, an orthopedic surgeon, to address complaints of knee and foot pain.  (Dkt. Nos. 31-11 at 1-3; 32-40 at 2).  After examining plaintiff, Defendant Bhatt prescribed pain medication and physical therapy, administered a steroid injection into plaintiff's left knee, and recommended bunion surgery on plaintiff's right foot.  (Dkt. Nos. 31-11 at 2-3; 32-40 at 2).  Plaintiff was taken to Rome Memorial Hospital for bunion surgery with defendant Bhatt on April 13,

---

[8]In support of his motion for summary judgment, defendant Rorick submits a sworn affidavit in which he maintains that the proposed reconstructive procedures to plaintiff's right foot were elective, that plaintiff was not in any immediate danger which would require surgery, and that the other, non-surgical options originally proposed to plaintiff remained available after the surgery was canceled.  (Dkt. No. 31-10 at 6).

[9]Plaintiff disputes that he was belligerent toward Dr. Rorick, and maintains that he was never informed defendant Rorick 'canceled' the surgery.  (Dkt. No. 31-5 at 34-38, 87-88).  Plaintiff's assertion is belied by the fact he did not inquire about the proposed surgery, or complain of foot pain, for the eight months following his last appointment with defendant Rorick.  When plaintiff did complain of foot pain in November 2016, the record reflects that he merely requested an increase in his pain medicine.  (Dkt. No. 32-13 at 5).  Plaintiff requested another increase in his pain medication on January 9, 2017, without inquiring about surgery. (Dkt. No. 32-2 at 2).

2017.  However, plaintiff's surgery was postponed due to issues with other surgical patients.  (Dkt. Nos. 31-11 at 3; 32-13 at 6).  Plaintiff was subsequently returned to Rome Memorial Hospital on April 20, 2017 for his bunionectomy.  According to various medical records, while he was being prepared for surgery, plaintiff told defendant Bhatt that the bunion was not "the problem" and did not bother him.  (Dkt. Nos. 32-42; 32-43).  Plaintiff told the doctor that it was another toe that was causing the pain in his foot, and that plaintiff wanted "all foot problems fixed at one time."  (*Id.*).  Because the surgery scheduled for that day was limited to a bunionectomy, defendant Bhatt canceled the procedure and indicated that he would speak to the medical staff at CNYPC to refer plaintiff to a different orthopedic surgeon, who could address the other surgical issues plaintiff wanted to pursue.  (*Id.*).

The next day, defendant Wilbur consulted with the medical team at CNYPC to determine if they should refer plaintiff a third time for the "elective procedure" to his right foot.  (Dkt No. 32-21).  Defendant Wilbur noted that plaintiff "insists on telling the surgeons how he wants his foot corrected," and that plaintiff had already, unsuccessfully gone through two surgeons.  (*Id.*).  The medical staff decided to refer plaintiff for "this elective procedure" one last time.  (Dkt. No. 32-13 at 7).  Plaintiff was referred to orthopedic surgeon Scott M. VanValkenburg, M.D., who performed surgery to plaintiff's right foot on October 5, 2017. (Dkt. No. 32-24).

Turning to the first prong of the deliberate indifference standard, no material issue of fact exists as to whether plaintiff was "was actually deprived of adequate medical care."  *Young*, 2018 WL 312714, at *9 (N.D.N.Y. Feb. 12, 2018).  Therefore,

the Court recommends granting defendants' motion for summary judgment on this basis alone. See, e.g., *Dobbins v. Pont*, No. 15-CV-3091, 2017 WL 3309726, at *6 (S.D.N.Y. Aug. 2, 2107) (granting summary judgment to prison official where undisputed facts showed the pretrial detainee received medical treatment); *Gray v. Kang Lee*, No. 9:13-CV-258 (GLS/DEP), 2015 WL 1724573, at *3 (N.D.N.Y. Apr. 15, 2015) (finding inmate was not actually deprived of adequate treatment where record demonstrated that the inmate-plaintiff was frequently treated, prescribed pain medication, tested with an x-ray and MRI, and referred to an orthopedic specialist).

Furthermore, defendants assert that plaintiff's foot condition did not constitute a sufficiently serious medical condition to meet the objective standard.  (Dkt. No. 31-2 at 15).  The court agrees, and in general 'the case law holds that prisoner complaints about bunions or other foot problems do not establish the objective prong of the deliberate indifference standard." *Houston v. Sheahan,* No. 13-CV-6594, 2017 WL 3425271, at *4 (W.D.N.Y. Aug. 9, 2017) (citing *Brown v. DeFrank*, No. 06 CIV 2235, 2006 WL 3313821, at *21 (S.D.N.Y. Nov. 15, 2006) (holding that prisoner's claims that defendants unreasonably delayed referral for needed podiatry services; intentionally cancelled and unreasonably delayed his bunion surgery; and intentionally denied him a referral for prescription footwear did not state a deliberate indifference claim)); *Hernandez v. Goord*, No. 02 Civ. 1704 (DAB), 2006 WL 2109432 at *1, 5-6 (S.D.N.Y. July 28, 2006) (plaintiff's painful injured left foot diagnosed as hammertoe with an overlap not severe enough for deliberate indifference claim); *McKinnis v. Williams*, No. 00 Civ. 8357, 2001 WL 873078 at *3-4 (S.D.N.Y. Aug. 1, 2001) (painful toe injury did

not "rise to the level of 'serious medical need'"); *Cole v. Scully*, No. 93 Civ.2066 (LAP), 1995 WL 231250 at *1, 5-6 (S.D.N.Y. Apr. 18, 1995) (bunions and tender feet after bunion surgery not a sufficiently serious medical condition).

With respect to any alleged delay in care, plaintiff was clearly not in urgent need of foot surgery, evidenced by the fact his procedures were repeatedly cancelled as a direct result of his own conduct. Defendants Rorick and Wilbur were prepared to move forward with plaintiff's procedure in October 2015, however plaintiff's undisputed noncompliance with the pre-surgical testing requirements prevented that surgery from taking place. Defendant Rorick was still willing to treat plaintiff once the EKG test was performed until he determined, based on plaintiff's belligerent behavior, that plaintiff was not a good surgical candidate. Dr. Bhatt was also prepared to perform a bunionectomy on plaintiff's right foot in April 2017 to alleviate some of plaintiff's alleged pain, however plaintiff declined the surgery because he desired that "all foot problems [be] fixed at one time." (Dkt. No. 32-42). "Under these circumstances, plaintiff cannot now be heard to complain of deliberate medical indifference." *Johnson v. Adams,* No. 9:14-CV-0811 (GLS/DEP), 2016 WL 6604129, at *6 (N.D.N.Y. July 25, 2016) (citing inter alia *Scarbrough v. Thompson*, No. 10-CV-0901 (TJM/CFH), 2012 WL 7761439, at *12 (N.D.N.Y. Dec. 12, 2012) (holding, where inmate plaintiff refused medical care from a nurse because he preferred to receive care from a different nurse, that "any alleged delay or interference in treatment was due to [inmate's] own actions" and could not subsequently "be transformed into an Eighth Amendment claim"); *Brown v. Selwin*, 250 F. Supp. 2d 299, 307-08 (S.D.N.Y. 1999) (no deliberate indifference

when it was uncontroverted that plaintiff refused medical treatment on several occasions); *Ross v. Kelly*, 784 F. Supp. 35, 46-47 (W.D.N.Y. 1992) (evidence failed to establish deliberate indifference to medical needs where plaintiff was largely to blame for many of the delays in his treatment due to his second-guessing of physician's advice and refusal of treatment), *aff'd,* 970 F.2d 896 (2d Cir. 1992); *Evering v. Rielly*, No. 98-CV-6718, 2001 WL 1150318, at *10 (S.D.N.Y. Sept. 28, 2001) ("[A]n inmate's refusal to accept medical treatment in no way signifies a deliberate indifference to serious medical needs.")).

Moreover, no reasonable jury could find that defendant Wilbur, Rorick or Bhatt were deliberately indifferent to plaintiff's medical needs in order to satisfy the mental element prong. Plaintiff was examined and treated for his foot problems on numerous occasions by these defendants. Despite plaintiff's conduct, defendants continued to treat plaintiff's condition with non-surgical interventions, including ordering plaintiff new orthotic shoes, prescribing physical therapy,[10] and administering pain medication and injections. In addition, notwithstanding plaintiff's behavior defendant Wilbur referred plaintiff to three different surgeons for what has been consistently identified as elective surgery. There is nothing to suggest that defendants here were reckless, that they deliberately prevented plaintiff from receiving care, or that their conduct was "objectively unreasonable." *See Singletary v. Russo,* No. 13-CV-04727, 2019 WL 1929819, at *12 (E.D.N.Y. Feb. 22, 2019) (granting summary judgment where there was no indication that defendant deliberately prevented plaintiff from receiving care, or

---

[10]Plaintiff refused to attend physical therapy treatment. (Dkt. No. 32-19 at 2).

that defendant was reckless, as opposed to merely negligent, in providing care).  To the extent that plaintiff alleges any miscommunication with, or delay by, the defendants, such allegations could at most constitute negligence,[11] and summary judgment is therefore appropriate.

### 3. Headaches

Although not particularized in his complaint, plaintiff testified at his deposition that he was asserting a deliberate indifference claim relative to "a migraine headache that was being unaddressed." (Dkt. No. 31-5 at 94-100).  Specifically, plaintiff claimed that "[defendant] Wilbur knew [plaintiff] was having migraine headaches and wouldn't give [him] anything to relieve [his] pain." (*Id.* at 99).  Defendants argue plaintiff's claim is not supported by the evidence of record.  (Dkt. No. 31-2 at 18).

 On September 1, 2017, defendant Wilbur saw plaintiff for complaints of right temporal pain that had become progressively worse over the past three months, along with double vision.  (Dkt. No. 32-27 at 2).  At that time defendant Wilbur noted plaintiff had "extremely elevated blood pressure," which she opined was the source of plaintiff's headaches.  (Dkt. Nos. 31-9 at 9; 32-27 at 2).  Defendant Wilbur administered a diuretic and blood pressure medicine to plaintiff.  Two hours later plaintiff's blood pressure had decreased, and plaintiff expressed that his headache had improved. (*Id.*; Dkt. No. 32-13 at 8).  Plaintiff denied complaints of headache at his medical visits throughout the remainder of September 2017.  (*Id.* at 8-9).

---

[11]Plaintiff's deposition testimony particularly corroborates my conclusion that any alleged misconduct by defendant Wilbur constituted, at most, negligence.  (Dkt. No. 31-5 at 72 ("[Defendant Wilbur is] overworked...[s]he's overburdened with a lot of work.  And she try [sic] to care, but she missed the mark when it came down to helping me)).

On October 5, 2017, when plaintiff returned from his outpatient foot surgery, he complained to defendant Wilbur of right temporal pain. (Dkt. No. 32-13 at 9-10). Defendant Wilbur told plaintiff that the headaches could be due to high blood pressure or migraines. (Dkt. No. 32-13 at 9). At that time, she administered pain medication and ordered a CT scan of plaintiff's head to rule out any other anomaly. (*Id.*). Plaintiff was scheduled for a CT scan on October 19, 2017, however he refused to attend the appointment.[12] (*Id.* at 10, Dkt. Nos. 32-30; 32-31 at 2; 32-32).

Plaintiff complained of a headache to the medical staff five times in October 2017, and he was given Tylenol each time he requested it. (Dkt. No. 32-33). A CT scan of plaintiff's head was eventually performed on November 16, 2017. (Dkt. Nos. 32-13 at 12-13; 32-24). The test results were normal. (*Id.*). On December 2, 2017, plaintiff complained of head pain to his right temporal area, which he believed was triggered by the smell of "oils" used by another patient. (Dkt. Nos. 31-9 at 9-10; 32-35). Plaintiff was diagnosed with a migraine headache, and the treating provider administered Imitrex and ordered a neurology and ophthalmology consult. (Dkt. Nos. 31-9 at 10; 32-35 at 2).

Although "chronic migraine headaches" have been found to be 'sufficiently serious' to warrant constitutional protection (*Moriarty v. Neubould*, No. 02-CV-1662, 2004 WL 288807, at *2 n. 2 (D. Conn. Feb. 10, 2004) (migraine headaches constitute a sufficiently serious condition when they are "extremely painful and debilitating")), it is

---

[12]According to the progress note prepared that day, plaintiff was informed that, for security purposes, he could not wear his hat to the off-site CT scan. (Dkt. No. 32-32). Plaintiff responded by shouting expletives and refusing to attend his CT scan if he was "forced" to take off his hat. (*Id.*).

also well established that "terrible and extreme headaches . . . do not satisfy the objective component" of a deliberate indifference claim. *Sledge v. Bernstein*, No. 11 Civ. 7450, 2012 WL 4761582, at *5 (S.D.N.Y. Aug. 2, 2012) (citing *Bradley v. Rell*, 703 F. Supp. 2d 109, 122 (S.D.N.Y.2010) (holding that "extreme headaches" do not constitute a sufficiently serious medical condition); *Qader v. New York*, 396 F. Supp. 2d 466, 470 (S.D.N.Y.2005) (finding that "terrible headaches" do not satisfy the objective component)).

Here, the medical records suggest that plaintiff's occasional headaches were not severe enough to impair his daily activities.  Plaintiff denied any complaints of head pain throughout the month of September 2017, after his initial headache was attributed to his high blood pressure and resolved by the medical staff.  Although plaintiff did complain of head pain at various times throughout October 2017, his willingness to interfere with his own treatment over a baseball hat calls into question the alleged "severity" of his pain.  Although plaintiff testified that his headaches brought him to tears on several occasions (Dkt. No. 31-5 at 97), plaintiff's headaches did not prevent him from asking to return to work, post-surgery, in November 2017.  (Dkt. No. 32-13 at 13).

In any event, the evidence of record does not support a finding that the mental element prong can be met with respect to plaintiff's headaches.  Even assuming plaintiff was suffering from sufficiently severe, chronic migraines, there is no evidence that defendant Wilbur was deliberately indifferent to plaintiff's medical needs. Defendant Wilbur consistently responded to plaintiff's complaint's of head pain by

administering medication and ordering further diagnostic testing.  To the extent that plaintiff contends the pain medication provided was not strong enough, or the right medication to alleviate his pain, disagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not plaintiff's constitutional rights.  *Sonds,* 151 F. Supp. 2d at 312 (citing *Estelle*, 429 U.S. at 107). Even if those medical judgments amount to negligence or malpractice, malpractice does not become a constitutional violation simply because the plaintiff is an inmate. *Id. See also Daniels v. Williams*, 474 U.S. 327, 332 (1986) (negligence not actionable under Section 1983). Thus, any claims of malpractice, or disagreement with treatment are not actionable under Section 1983. Accordingly, defendants would also be entitled to summary judgment on plaintiff's deliberate indifference claim relative to his headaches.

 **WHEREFORE**, based on the findings above, it is

 **RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 31) be **GRANTED** and the complaint **DISMISSED IN ITS ENTIRETY**.

 Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: May 9, 2019

**Hon. Andrew T. Baxter**
**U.S. Magistrate Judge**